[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This case arises out of a motor vehicle accident in which the plaintiff, Marsella Tolmazin, claims that she suffered CT Page 9223 serious physical injuries, losses and damages because of the negligence and/or recklessness of defendants, William Kautter and/or George Howe, in the operation of their motor vehicles. In the first two counts of her Amended Complaint ("Complaint") dated February 6, 1992, Tolmazin alleges that Kautter caused the accident when, at approximately 8:00 A.M. on July 14, 1989, the vehicle he was operating in the westbound lane of Route 2 in East Hartford, Connecticut, forcibly collided with the rear of the vehicle in front of him, then being operated by defendant Howe, and pushed the Howe vehicle into the rear of her vehicle, causing damage and injury. In her first count, Tolmazin claims that Kautter was negligent and careless in the operation of his vehicle because, inter alia, he "failed to keep said vehicle under proper and reasonable control." In her second count, she claims that Kautter was "reckless" in the operation of his vehicle because he operated it at an unreasonable speed and in such a manner as to "endanger the life of another person," in alleged violation of General Statutes 14-218a and 14-222.
In the third and fourth counts of her Complaint, plaintiff Tolmazin omits all reference to defendant Kautter, claiming instead that defendant Howe caused the accident in question when, at the time and place alleged in the first two counts of the Complaint, "[he] forcibly collided with the rear of [her] vehicle[.]" In her third count, Tolmazin claims that Howe was negligent and careless in the operation of his vehicle, in each of the following ways:
4. [He] . . .
 a) Operated said vehicle at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions, and/or in violation of Section 14-218a of the Connecticut General Statutes, as amended;
 b) Followed the motor vehicle of the Plaintiff more closely than was reasonable and prudent, having regard to the speed of such vehicles, the traffic upon and the condition of the highway and weather conditions, in violation of Section 14-240 of the Connecticut General Statutes, as amended; CT Page 9224
 c) Failed to keep said vehicle under proper and reasonable control;
 d) Failed to keep a proper and reasonable lookout for the motor vehicles upon said highway;
 e) Failed to apply his brakes in time to avoid a collision, although by a proper and reasonable exercise of the Defendant operator's faculties, he could and should have done so;
 f) Failed to turn said motor vehicle to the left or the right so as to avoid a collision, although by a proper and reasonable exercise of the Defendant operator's faculties, he could and should have done so; [and]
 g) Operated said motor vehicle when it was not equipped with brakes adequate to bring it to a controlled stop within the distance and under the conditions prescribed, and when the brakes were not in good working order, and/or in violation of Section 14-80h of the Connecticut General Statutes, as amended[.]
In her fourth count, Tolmazin claims that Howe was reckless in the operation of his vehicle, in that
4. [He] . . .
 a) Operated said vehicle at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions, in violation of Section 14-218a of the Connecticut General Statutes as amended; [and]
 b) Operated [it] recklessly in that he knew or should have known that the manner in which he was operating [it] created an obvious danger to others, despite his duty to others on said highway. Said conduct endangered the life of another person having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, in violation of Section 14-222 of the CT Page 9225 Connecticut General Statutes, as amended.
Defendant Kautter answered the plaintiff's Complaint by admitting, inter alia, that he negligently caused the collision here at issue by "fail[ing] to keep [his] vehicle under proper and reasonable control." Having made that admission, he has settled his part of this lawsuit by stipulating to the entry of judgment in favor of plaintiff Tolmazin.
Defendant Howe, by contrast, has denied all claims of negligence and recklessness against him. Indeed, having now completed substantial pretrial discovery both in this case and in his own related lawsuit against defendant Kautter, he has moved this Court under Practice Book 378 to enter a summary judgment in his favor on the third and fourth counts of plaintiff Tolmazin's Complaint.
 I.
"Summary judgment is a method of resolving litigation when the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989).
"In ruling on a motion for summary judgment the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Noland v. Borkowski, 206 Conn. 495, 505, 538 A.2d 1031 (1988); see also Reid Reige v. Brainard Cashman Ins. Agency, Inc., 26 Conn. App. 580,584, 602 A.2d 1051 (1992).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334
(1991). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" Id. (Citation omitted).
Defendant Howe contends that he is entitled to judgment as a matter of law because the materials he has submitted along with his Motion eliminate any genuine issue as to a single critical fact which is essential to each and every CT Page 9226 allegation of negligence and/or recklessness which the plaintiff has made against him. More particularly, he argues: first, that each of Tolmazin's allegations requires proof that he caused the collision here at issue by his negligence and/or recklessness in the operation of a motor vehicle which was moving under its own power; and second, that the materials submitted in support of his Motion conclusively establish that he did not so cause the collision, for they show without contradiction that he had brought his vehicle to a complete stop behind plaintiff Tolmazin's vehicle several seconds before it was struck in the rear by William Kautter's vehicle, and thereby pushed into the rear of the Tolmazin vehicle. For the following reasons, the Court agrees with defendant Howe and grants his Motion for Summary Judgment.
 II.
A close examination of the plaintiff's Complaint confirms the defendant's threshold assertion that each of the plaintiff's essential allegations requires proof that he was negligent or reckless in the operation of a motor vehicle which was moving under its own power. The plaintiff's first specification of negligence and first specification of recklessness are virtually identical. Both allege that Howe "[o]perated [his] vehicle at a rate of speed greater than was reasonable" under existing road, traffic and weather conditions, in violation of General Statutes 14-218a. Though it is well-established that for certain purposes a person may be deemed to "operate" a motor vehicle without causing it to be moved from one place to another; see, e.g., State v. Swift,125 Conn. 399, 402-403 (1939) (holding that one "operates" a motor vehicle within the meaning of General Statutes 14-227, Connecticut's drunk driving statute, whenever he "intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle"); such a reading cannot fairly be given to the allegations of the plaintiff's Complaint. By charging defendant Howe with "operat[ing] . . . at a speed greater than was reasonable" under existing traffic, road and weather conditions, the plaintiff plainly committed herself to proving that his vehicle was moving at some speed, and not just standing still.
A similar analysis must be made of each of the plaintiff's additional allegations of negligence and recklessness. CT Page 9227 Plaintiff's second specification of negligence — that the defendant was following the plaintiff too closely — alleges conduct which could only have been engaged in by the operator of a vehicle which was moving under its own power. Plaintiff's third and fourth specifications of negligence likewise describe conduct that is necessarily associated with the operation of a moving vehicle. Respectively, they allege that the defendant failed to keep his vehicle under proper and reasonable control and that he failed to keep a proper lookout for other vehicles on the highway. Such conduct cannot cause a collision unless it is engaged in by a person who is operating a moving motor vehicle. Similarly, the plaintiff's sixth specification of negligence alleges conduct that could not logically have caused a motor vehicle collision unless it was engaged in by the operator of a moving vehicle. In it, the plaintiff claims that the defendant caused the accident by "fail[ing] to turn [his] vehicle to the left or the right so as to avoid a collision."
The plaintiff's final specifications of negligence concern the defendant's alleged failure to use, install, and/or properly maintain his brakes. In her fifth specification of negligence, the plaintiff alleges that the defendant failed to apply his brakes in time to avoid the collision. In her seventh specification of negligence, she claims that the defendant's brakes were either inadequate or too poorly maintained to bring his vehicle to a controlled stop under the road conditions which existed at the time of the collision. Both of these allegations obviously presuppose that the defendant's vehicle was moving along the highway when the need to brake it and bring it to a controlled stop arose. If it were otherwise, the defendant's alleged failure either to use his brakes or to properly install and maintain them could not logically have caused this rear-end collision.
The plaintiff's final specification of recklessness also requires proof that at the time of his alleged conduct, defendant Howe was operating a moving motor vehicle. There, the plaintiff alleges that the defendant operated his vehicle recklessly, in such a manner as to endanger the life of another person "having to do with the width, traffic and use of the highway, the intersection of streets and weather conditions."
It is true, of course, that a non-moving vehicle can be CT Page 9228 so "operated" as to endanger the lives of others. When, for example, an occupied vehicle is turned on and left running in an enclosed garage, its operation risks poisoning its occupants with carbon monoxide gas. Indeed, it might also be fairly argued that whenever a person who has drunk too much alcohol starts the engine of a motor vehicle, he endangers the lives of others because of the inherent danger that he will accidentally set the vehicle in motion and be unable safely to control it.
Here, however, the plaintiff's claim of recklessness is based explicitly on conduct which the plaintiff claims to have endangered others because of the specific road and weather conditions in which it occurred. Whereas safety in the operation of a moving motor vehicle depends directly on existing road and weather conditions, safety in the operation of stationary vehicle does not. For that reason, and because the operation of a stationary vehicle cannot cause a collision unless it actually sets the vehicle in motion, the plaintiff's final claim of recklessness must be read to require proof that at the time he endangered others, the defendant was operating a moving motor vehicle.
 III.
The defendant is also correct in his assertion that the materials he submitted in support of his Motion eliminate any genuine issue as to his operation of a moving motor vehicle at the time of the collision. In support of his Motion, the defendant filed his own affidavit, in which he swore to the following facts:
 4. On July 14, 1989 at approximately 8:00 a.m. I was proceeding westerly on Route 2 in East Hartford, Connecticut, and came to a complete stop approximately five feet to the rear of a vehicle operated by Marsella Tolmazin.
 5. I was at a complete stop for several seconds, with my foot on the brake, when I was struck in the rear by a vehicle operated by William Kautter, which vehicle pushed my vehicle into the rear of the vehicle operated by Marsella Tolmazin. CT Page 9229
Consistent with these averments, the defendant also filed certain formal admissions which his co-defendant, William Kautter, had made in response to requests for admissions duly served upon him both in this case and in Howe's own lawsuit against him. To defendant Howe's own request for admissions, defendant Kautter admitted: (1) that at the time of the accident he "did suddenly and without warning negligently forcible (sic) collide with the rear of [defendant] George Howe's vehicle, pushing said vehicle into the rear of the vehicle being operated by Marsella Tomalzin (sic);" and (2) that "[he] failed to keep his aforesaid vehicle under proper and reasonable control." To plaintiff Tolmazin's request for admissions, defendant Kautter failed to respond within thirty days, as required by C.P.B. 239. He is therefore deemed to have admitted each fact to which an admission was requested, including: (1) that at the time and place in question, he "suddenly and without warning, negligently and forcibly collided with the rear of the Defendant, George Howe's vehicle, pushing said vehicle into the rear of the vehicle being operated by the Plaintiff, Marsella Tolmazin"; (2) that "[he, Kautter] is 100% responsible for the automobile collision" in question; (3) that "the Defendant, George Howe, is 0% responsible for [that] collision"; (4) that "[he Kautter] failed to keep his vehicle under proper and reasonable control"; and (5) that "[he Kautter] failed to keep a proper and reasonable lookout for the other motor vehicles upon the highway." Read together with defendant Howe's own affidavit, these materials clearly tend to prove that at the time of this collision, defendant Howe was not operating a motor vehicle which was moving under its own power.
In response to the defendant's Motion, plaintiff Tolmazin has filed a single extract from her own deposition in this case.[1] In this portion of her deposition, the plaintiff gave the following answers to questions put to her on cross-examination by her own lawyer:
 Q. Marsella, did you look behind you prior to the impact and the accident occurring?
 A. I usually — I usually look. I look — I looked in the mirror because my car was the last one in the row of stopped cars on a path where the visibility is limited, so I looked. CT Page 9230
Q. so the answer is yes.
A. Yes.
 Q. Yet you testified you did not see Mr. Howe's vehicle prior to the impact.
 A. I have seen many cars. His car was — if it was, I haven't seen it, like —
 Q. When you looked behind you, as you testified you just did did you see Mr. Howe's car?
A. No.
 Q. Do you recall how long before the impact you had looked behind you?
 A. It is seconds or minutes or half a minute. I was, sitting and watching, mirror and radio. So this was the car up front, mirror, and radio — these three things, just waiting for the time to move.
 Q. And was there one or two impacts when you felt the collision?
 A. No, there was one. It was one, 1 and very heavy one.
Q. One heavy impact? Yes?
A. Yes, one. No, it was one.
Later, on re-cross-examination, the plaintiff was further questioned as follows:
 Q. Do you have any actual knowledge as to how long your car was stopped or became almost stopped before you were hit?
 A. I don't want to mislead myself. I can say that it was — it was not a split second. It was longer. Before it was hit, it was thirty seconds, one minute. When you were in a hurry, CT Page 9231 it is endless, but it was just — it was not a moment.
 Q. So you never saw Mr. Howe's vehicle before the accident; is that true?
A. No.
 Q. So, as far as you know, he may have been stopped before you were hit; you just don't have any knowledge of that, correct?
 A. I don't have any knowledge, but I doubt he was stopped because I could have seen that he was, probably. I don't know.
 Q. You have to answer my question. Do you know whether he was stopped or not -[2]
On the basis of this testimony, the plaintiff argues that there is indeed a genuine issue of fact as to the defendant's operation of a moving motor vehicle at or shortly before the time of the collision here at issue. Because she claims she did not see Mr. Howe's vehicle behind her when she looked in her rearview mirror "just before the collision," the inference is available that he came upon her while moving under his own power, striking her in the rear as a result of his own negligence, not that of defendant Kautter.
A clear reading of plaintiff's testimony, however, belies the latter claim. Indeed, it actually tends to confirm the defendants' position rather than to undermine it. First, the plaintiff's testimony does not establish that she looked in her rearview mirror "just before" the collision. The plaintiff, in all candor, admitted in her deposition that she did not know how long she had been stopped before she was hit, or how much time elapsed between her final look behind her and the collision. Her best estimate of that time was between 30 second and one minute. Thus, though it was surely her impression that if the defendant's car was stopped behind her she "could" have seen it, she admitted, on questioning by her own lawyer, that she did not know whether or not he stopped before his car hit hers.
The plaintiff also confirmed that when she was hit she CT Page 9232 felt only one large impact. Had defendant Howe collided first with her vehicle, then been hit in the rear by defendant Kautter, the plaintiff would have felt two separate impacts instead of one. Experiencing a single impact is fully consistent with defendant Howe's affidavit, wherein he swore that his car was pushed into the plaintiff's car by defendant Kautter.
The most plaintiff Tolmazin's testimony does is to establish that she has no idea whether or not defendant Howe stopped, as he claims, before his vehicle hit hers. Because her speculation to the contrary would not afford the finder of fact any reasonable basis upon which to dispute the defendant's claim, it gives this Court no basis upon which to deny the defendant's Motion for Summary Judgment.
The case at bar is therefore quite similar to another case in which the Connecticut Supreme Court upheld a trial court's granting of a motion for summary judgment on a negligence claim. There, in Acampora v. Asselin, 179 Conn. 425
(1980), the trial court had granted defendant's motion for summary judgment despite the plaintiff's insistence that the deposition testimony of a witness had put the comparative negligence of the defendant's decedent, one Evelyn Leining, in issue. The only evidence submitted by the plaintiff in opposition to the defendant's motion was the deposition testimony of a single witness who had been a passenger in Leining's car at the time of the collision. To a series of questions exploring whether Leining had been traveling faster than the posted speed of 45 miles per hour when she was struck head-on in her own lane of travel, the witness answered as follows:
 Q. If I understand correctly, you cannot tell us exactly how fast your car was going?
A. No, I cannot.
 Q. Do you have any general impression. Was it going at something comparable to the speed limit, or was it your impression it was going very slow or very fast?
A. I would say it would be comparable to the CT Page 9233 speed limit.
Q. But you don't know precisely?
 A. I don't know exactly. It might have been 47, 50, 51. I don't know.
Id. at 427.
To the claim that this portion of the witness's deposition had somehow put Leining's comparative negligence in issue, the Supreme Court responded as follows:
 This testimony, far from establishing that [the driver] was speeding, indicates only that the witness could not say that the car's speed might have been viewed as a whole and in context, [this] testimony is too speculative, too conjectural to be evidence of speeding. [citations omitted.] In the absence of evidence as to speeding or any other act of negligence, on the part of the defendants, the plaintiff has failed to show the existence of any issue of material fact which would warrant a full trial.
Id. at 427-428.
By parallel logic, the speculative testimony of plaintiff Tolmazin is simply "too speculative, too conjectural to be evidence" that defendant Howe caused this collision by his recklessness or negligence in the operation of a moving motor vehicle. There being no genuine issue as to that critical, material fact, the defendant's Motion for Summary Judgment is hereby granted.
Michael R. Sheldon, Judge of the Superior Court